DONALD STEVEN SPEAKMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Speakman v. Commissioner
Docket No. 19421-84.
United States Tax Court
T.C. Memo 1986-171; 1986 Tax Ct. Memo LEXIS 434; 51 T.C.M. (CCH) 939; T.C.M. (RIA) 86171; April 28, 1986. Donald Steven Speakman, pro se. Dennis R. Onnen, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, in the statutory notice of deficiency dated March 19, 1984, determined deficiencies in income tax and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b) [1]
Sec. 6654
1978
$2,119.00
$1,059.50
$67.67
1979
2,380.00
1,215.00
99.05
1980
2,838.00
1,419.00
180.85
1981
3,217.00
1,608,50
246.59
By an amendment to his answer, respondent has pled, in the alternative to the addition to tax under section 6653(b), additions to the tax under sections 6651(a)(1) and 6653(a). Our consideration of this case focuses upon the *435 relationship of Donald Steven Speakman, petitioner, to his "Life Science Church" and petitioner's "vow of poverty" in connection therewith. Some of the facts have been stipulated to by the parties and said stipulation, along with attached exhibits, is incorporated herein by this reference. Petitioner, Donald Steven Speakman, resided in Lawrence, Kansas, at the time he filed the petition in this case. Petitioner, during the years in question, was employed as a truck driver by Hercules Aerospace Division, Hercules, Inc., at the Sunflower Army Ammunition Plant in DeSoto, Kansas. Petitioner's employer was not aware of his "Life Science Church" or petitioner's relationship to that church. All paychecks were issued directly to petitioner and Forms W-2 were issued to him in his own name. Petitioner admits that he was an employee and that his employer paid a salary directly to him in exchange for his services. Moreover, petitioner stipulated as to the amount of the wages received in each of the four taxable years in question. [2] *436 For several years prior to and continuing through the years in question, petitioner engaged in what he termed a "prison ministry." It was petitioner's practice to visit two different local jails in his community to discuss salvation with and hand out Christian literature to inmates in the local jail. Sometime during 1978, petitioner requested and received a so-called mail-order ministry kit from William E. Drexler, the self-proclaimed bishop and founder of the "Life Science Church." Petitioner filled in the blanks provided in the pro forma documents and, sometime thereafter, opened a bank account in the name of the church with petitioner as its trustee, and "donated" his personal residence to the church, also naming himself as trustee on behalf of the church. Petitioner did not initially complete some steps called for in the mail ministry kit, inasmuch as he did not transfer the real property to himself as trustee for the church until the 19th day of April, *437 1979. Petitioner's activities and lifestyle did not change subsequent to his execution of the pro forma documents concerning the Life Science Church. He continued to drive a truck for his employer, pay bills concerning his living expenses, albeit from the church account which he controlled rather than from his personal account, and essentially bases his contention that he is exempt from taxation upon the few simple form documents which petitioner executed as part of his mail-order ministry kit. There were no other members of petitioner's "church," nor was there sacerdotal function or any "contributions" from others that petitioner was willing either to identify or that, in fact, existed. Petitioner's testimony was vague and inconclusive concerning the activities of his "church." Although petitioner continued to occasionally visit local jails, the amount of time or funds expended in so doing or the relationship to petitioner's mail-order ministry was not established at the trial. Beginning in 1977, before petitioner acquired his mail-order ministry, he submitted a Form W-4E on April 27, 1977, advising his employer that he anticipated that he would incur no liability for Federal *438 tax for 1977. For each of the taxable years 1978, 1979, 1980 and 1981, petitioner submitted Forms W-4 to his employer reflecting that he was exempt from the withholding of tax. Petitioner filed a U.S. Individual Income Tax Return (Form 1040) for the taxable year 1977. Petitioner's education included one year at the college level. We find it hard to believe that petitioner could honestly believe that he could escape liability for Federal income taxation and still enjoy the unfettered use of all of the wages that he had earned merely by filling in the forms sent to him as part of a mail-order ministry kit. We find no significant difference in fact or law from our holding in , (1982), affd. . Clearly, petitioner's unfettered use of the property and funds purportedly transferred to the "church" combined with the nature and lack of activity of the "church" establishes that the "church" was not a separate and distinct principal. , affd. without published opinion . Petitioner's claim *439 that he was an agent of the church in his activity as an employee driving a truck is not well founded, see . This is especially true in this case where petitioner's employer was not even aware of the Life Science Church or petitioner's relationship to same. Holding true to form, petitioner raised numerous "protester-type constitutional arguments" which do not merit the need to reference the many precedents unfavorable to petitioner. As we stated in : Petitioner, on brief, comments little about his "church" and instead puts forth the baseless and overused arguments that many tax protesters have unsuccessfully advanced before this and other courts. Petitioner poses a riddle centered about the voluntary nature of the tax system. The conclusion he reaches is that one may not be forced to self-assess since the system is voluntary. Petitioner has revealed his true intent to evade tax by these baseless claims. His choice to hide behind the facade of a religious organization to accomplish the evasion is, coupled with the other facts in this record, fraudulent. *440 Petitioner's actions are most disruptive of the system that guarantees constitutional freedom of religion. Petitioner attempts to use this constitutional guarantee as a sword to evade payment of tax, rather than as a shield permitting the free exercise of his religion. [54 P-H Memo T.C. par. 85,243 at 1062-85, .] Petitioner in this case failed to file returns in all taxable years in issue after having filed for prior years based solely upon a pro forma mail-order ministry kit. He also claimed exemption from withholding tax and has attempted to interpose his "church" to evade payment of his taxes for 1978 through 1981. In view of the foregoing, we hold that respondent has carried his burden of proving that petitioner's failure to file tax returns for the taxable years 1978, 1979, 1980 and 1981 were intentional with intent to defraud the United States and constituted part of a pattern of activity intended to evade the reporting and payment of tax. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. For the taxable years 1978 through 1981, petitioner received wages from his employer in the following amounts: ↩
Year
Amount of Wages
1978
$13,720.41
1979
15,289.33
1980
16,726.39
1981
18,187.36